ET 2729
EDWARD M. TEITELBAUM, P.C.
66 Route 17 North
Paramus, New Jersey 07652
(201) 291-8660
Attorneys for Plaintiff

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

NIA SECURITIES, LLC,

    Plaintiff,

-vs-

RODNEY SQUARE MANAGEMENT
CORP., CRAMER ROSENTHAL
McGLYNN, LLC; AND WILMINGTON
TRUST CORPORATION,
jointly, severally and individually,

    Defendants.

CIVIL ACTION NO.:

**COMPLAINT AND
JURY TRIAL DEMAND**

---

Plaintiff, NIA Securities, LLC, by and through its attorney, Edward M. Teitelbaum, P.C., complaining of the Defendants, Rodney Square Management Corp., Cramer Rosenthal McGlynn, LLC and Wilmington Trust Corporation, respectfully alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction in this Court is proper under 28 U.S.C. Section 1332, as the amount in controversy exceeds $75,000.00 and the matter in controversy involves citizens of different States.

2. Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in the District of New Jersey.

## THE PARTIES

3. Plaintiff, the NIA Securities, LLC ("NIA") is a New Jersey Limited Liability Company with its principal place of business at 66 Route 17 North, Paramus, New Jersey 07652.

4. Wilmington Trust Corporation ("Wilmington") is, upon information and belief, a Delaware corporation and a financial holding company under the Federal Bank Holding Company Act, with its principal place of business located at 1100 N. Market Street, Wilmington, Delaware.

5. Rodney Square Management Corp. ("RSMC") is, upon information and belief, a Delaware corporation with its principal place of business located at 1100 N. Market Street, Wilmington, Delaware. Upon information and belief, RSMC is a wholly owned subsidiary of Wilmington and a registered investment adviser.

6. Cramer Rosenthal McGlynn, LLC ("CRM") is, upon information and belief, a New York limited liability company, with its principal place of business located at 520 Madison Avenue, New York, New York. Upon information and belief, Wilmington owns approximately 82% of the outstanding issued shares of CRM.

7. Upon information and belief, CRM is an investment advisory firm specializing in equity investments in small to middle capitalization value-style stocks.

## FACTS COMMON TO ALL CLAIMS

8. In or about early 2002, NIA began discussing a proposed business transaction with Wilmington regarding the ING Group ("ING"). ING is a Dutch global financial services company, providing a wide array of banking, insurance and asset management services.

9. NIA proposed to Wilmington that it act as a facilitator/consultant for a transaction

wherein NIA, as an intermediary to facilitate the placement of certain mutual funds owned or administered by RSMC, Wilmington and/or CRM in the retirement fund offerings of ING Financial Advisors.

10. Wilmington executives, who in turn, were executives of RSMC, directed NIA to direct the proposal to RSMC, as RSMC administered and supervised the Wilmington's mutual funds.

11. From in or about January 2002 through September 1, 2002, the date the Agreement was executed (the "Execution Date"), NIA executives met, either telephonically from New Jersey or in person with RSMC and/or Wilmington executives.

12. NIA attended numerous meetings and had numerous phone conferences with executives of both Wilmington and RSMC in an effort to facilitate the relationship between ING and Wilmington and/or its affiliate or subsidiary CRM.

13. On or about September 1, 2002, after many months of negotiating, RSMC and NIA entered into a written agreement wherein NIA agreed to perform services, as specifically requested by and on behalf of RSMC in exchange for the payment set forth in the Agreement (the "September 1st Agreement").

14. RSMC represented to NIA that it supervised the "Wilmington family of mutual funds".

15. RSMC represented to NIA on numerous occasions that it was authorized to enter the September 1st Agreement with NIA.

16. Pursuant to the terms of the September 1st agreement, NIA was entitled to receive compensation equal to .10% per annum of the average daily net asset value of the shares of the CRM

Mid-Cap Value Fund ("Retail Class Fund") which were owned beneficially by ING customers.

17. At the same time as NIA was coordinating the business relationship between ING and RSMC and Wilmington, CRM was operating a CRM Mid-Cap Value Fund, Investor Class ("Investor Class Fund").

18. Upon information and belief, the only difference between the Retail Class Fund and the Investor Class Fund were the fees charged by CRM and the parties to whom the fees were paid.

19. As a result of the business relationship arranged by NIA between RSMC, Wilmington and ING, ING began offering the Investor Class Fund in the ING portfolio of offered mutual funds.

20. As a result of the business relationship arranged by NIA between RSMC, Wilmington and ING customers purchased shares in the Retail Class Fund and/or the Investor Class Fund.

21. Upon information and belief, as a direct and/or proximate result of NIA's actions, ING customers purchased approximately Thirty Five Million Dollars ($35,000,000.00) Dollars of shares in the CRM Mid-Cap Value Fund[1].

22. Unbeknownst to NIA and in breach of the September 1st Agreement, upon information and belief, the Retail Class Fund was terminated by RSMC, Wilmington and/or CRM, without Notice to NIA.

23. In the alternative, at the specific request and insistence of RSMC and/or Wilmington, CRM terminated the Retail Class Fund.

24. Upon information and belief, all shares purchased by ING customers investors of the Retail Class Fund were transferred to the Investor Class Fund.

---

[1] These calculations may include beneficial purchases after the termination of the Retail Class Fund, in the Investor Class Fund. Hereinafter the Investor Class Fund and the Retail Class Fund are collectively referred to as the ("Combined Funds").

25. The Retail Class Fund and the Investor Class Fund were identical in all material respects.

26. Upon information and belief, the Retail Class Fund was organized solely to satisfy the terms of the September 1st Agreement and facilitate the deposit of funds from ING.

27. The September 1st Agreement required NIA to receive notice of all material events that occurred with respect to the said September 1st Agreement.

28. The Defendants were required to provide NIA with notice of the termination of the Retail Class Fund.

29. RSMC and/or Wilmington failed to provide NIA notice of the termination of the Retail Class Fund as required by the September 1st Agreement.

30. Upon information and belief, all contributions in the Retail Class Fund, that were owned beneficially by ING customers, were transferred without notice to or the knowledge of NIA, to the Investor Class Fund.

31. The September 1st Agreement required that NIA be paid monthly based upon the terms set forth in the said September 1st Agreement.

32. In the event that payment was not made in accordance with the September 1st Agreement, NIA would be entitled to interest on all fees due at a rate equal to the prime rate as announced by Wilmington until the fees have been paid.

33. NIA is due substantial sums of money from the Defendants RSMC and Wilmington jointly and severally.

34. NIA has never been paid any fees due under the September 1st Agreement.

35. Commencing in or about early 2007, NIA sought an accounting from the Defendants

herein, as permitted under Section 10 of the September 1st Agreement.

36. The Defendants herein jointly and severally have refused to permit NIA to undertake an accounting or provide any documentation regard the same.

37. After NIA contacted the Defendants regarding the accounting, CRM advised NIA that while NIA, RSMC and Wilmington were negotiating the September 1st Agreement, the Defendants entered a separate agreement with ING.

38. Upon information and belief, the Defendants utilized the services of NIA to establish a relationship with ING.

39. The Defendants relationship with ING was a direct and proximate result of the actions and efforts of NIA.

## FIRST COUNT
(Declaratory Judgment)

40. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 39 of the Complaint as if fully set forth at length hereat.

41. Upon information and belief, CRM or Wilmington or RSMC are the owner(s) of the Investor Class Fund and the Retail Class Fund.

42. Upon information and belief, the Retail Class Fund was disbanded by CRM, Wilmington and/or RSMC and each ING customer that held shares in the Retail Class Fund, had such shares transferred to the CRM Investor Class Fund.

43. Upon information and belief the substance of the transaction, wherein the Retail Class Fund was collapsed into the Investor Class Fund, constituted a a consolidation or a merger of the said funds, one with the other as a matter of law.

44. Upon information and belief, the Investor Class Fund constitutes a continuation of the terminated Retail Class Fund.

45. Upon information and belief, the subject transaction was undertaken by the Defendants, at least partially to evade liability to NIA under the September 1st Agreement and converting the relationship NIA facilitated between the Defendants and ING.

46. As a result of the collapse and or consolidation of the Retail Class Fund with the Investor Class Fund, the Retail Class Fund no longer was able to satisfy the obligation(s) due to NIA under the September 1st Agreement.

47. NIA is entitled to collect all compensation due under the September 1st Agreement, from the Defendants, based upon the combined total of purchases by ING customers in the Combined Funds.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally, as follows:

- A. A declaratory judgment declaring the Retail Class Fund and the Investor Class Fund are one in the same and the Plaintiff is entitled to compensation pursuant to the September 1st Agreement on all purchases made in either fund by ING customers;

- B. Awarding the Plaintiff compensation pursuant to the September 1st Agreement based upon purchases in the Combined Funds by ING customers plus interest per the September 1st Agreement;

- C. Awarding compensatory damages and punitive damages;

- D. Awarding interest, attorneys' fees, and costs of suit; and,

- E. Awarding such other relief as the Court finds just and equitable.

## SECOND COUNT
(Breach of Contract against Wilmington and RSMC)

48. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47 of the Complaint as if fully set forth at length hereat.

49. Pursuant to the September 1st Agreement, the Plaintiff was entitled to receive compensation equal to .10% per annum of the average daily net asset value of the shares of the CRM Mid-Cap Value Fund which were owned beneficially by ING customers plus interest on all sums unpaid.

50. Upon information and belief, in or about June, 2007, there was approximately Thirty Five Million Dollars ($35,000,000.00) in the Combined Funds.

51. At present, there remains due and owing from the defendants jointly and severally, the approximate sum of Three Hundred Fifty Thousand ($350,000.00) Dollars together with interest thereon pursuant to the September 1st Agreement.

52. Payment has been demanded and the Defendants, in all material respects, have failed and otherwise refused to pay the amounts due.

53. Defendants RSMC and Wilmington have breached the September 1st Agreement with NIA.

54. As a direct and proximate result thereof, NIA has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally as follows:

A. Compensatory damages in an amount to be determined after the trial of this action;

B. Consequential damages in an amount to be determined after the trial of this action;

C. Punitive damages in an amount to be determined after the trial of this action;

D. Costs, including reasonable attorneys' fees, incurred in bringing and prosecuting this action; and

E. An accounting of all share purchases from September 1, 2002 through the date hereof, in the Combined Funds by ING customers or that are or were owned beneficially by ING customers;

F. Such other and further relief as the Court deems just and proper.

## THIRD COUNT
(Negligent Misrepresentation by Defendants Wilmington and RSMC)

55. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 54 hereinabove as if set forth at length hereat.

56. At the time the parties were negotiating the terms of the September 1st Agreement, the defendants, Wilmington and RSMC, negligently made misrepresentations of material facts to NIA, which in turn induced NIA to proceed with the facilitation of the relationship between these Defendants and INC and lead to the execution of the September 1st Agreement.

57. Upon information and belief, Wilmington and/or RSMC negligently provided inaccurate information to NIA, which in turn was relied upon by NIA as information that was true and accurate. Plaintiff NIA reasonably relied on such negligent representations made by Wilmington and/or RSMC and acted to facilitate the relationship between ING and Wilmington or RSMC.

58. Wilmington and/or RSMC, upon information and belief, negligently made misrepresentations of material facts which had the effect of inducing NIA into facilitating any

agreement between RSMC and/or CRM and/or Wilmington and ING entered prior to September 1, 2002.

59. Such information was negligently provided to NIA and thereafter reasonably relied on by NIA in proceeding with its obligations under the September 1st Agreement and facilitating the relationship between the Defendants herein and ING.

60. As a result of the parties' past working relationship, the Plaintiff reasonably relied, to its detriment, upon the Defendants' misrepresentations and omissions.

61. NIA reasonably believed that the Defendants herein were being truthful and honest, and NIA expressly and reasonably relied upon the negligent misrepresentations when NIA acted in good faith to facilitate the relationship between ING and the Defendants herein. In fact, RSMC and/or CRM and/or Wilmington had a duty to NIA not to make such misrepresentations, whether negligent or otherwise.

62. As a direct and proximate result of the negligent misrepresentations of the Defendants herein, NIA suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly, severally and individually as follows:

    A.    Compensatory damages in an amount to be determined at the trial of this action;

    B.    Consequential damages in an amount to be determined at the trial of this action;

    C.    Punitive damages in an amount to be determined at the trial of this action;

    D.    Costs, including reasonable attorneys' fees, incurred in bringing and prosecuting this action; and

    E.    An accounting of all share purchases from September 1, 2002 through the date

hereof, in the Combined Funds by ING customers or that are or were owned beneficially by ING customers;

F. such other and further relief as the Court deems just and proper.

### FIFTH COUNT
(Breach of Covenant of Good Faith Against Wilmington and RSMC)

63. Plaintiff repeats and reiterates each and every allegation contained in paragraph1 through 62 as if fully set forth at length herein.

64. The Defendants default under the terms of the September 1st Agreement as described hereinabove constitutes a breach of their implied covenant of good faith and fair dealing in their performance and execution of every contract.

65. As a direct and proximate result of the Defendants breach of their implied covenant of good faith and fair dealing NIA, suffered and will continue to suffer damages.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally, as follows:

A. Compensatory damages for the amount due and owing pursuant to the September 1st Agreement, as well as accrued interest thereon pursuant to the terms thereof;

B. Punitive damages for the willful failure to honor the Agreement;

C. An accounting of all share purchases from September 1, 2002 through the date hereof, in the Combined Funds by ING customers or that are or were owned beneficially by ING customers;

D. Attorney fees;

E. Interest and costs of this suit;

F Such other and further relief as the court may deem proper and just under the circumstances.

## SIXTH COUNT
(Unjust Enrichment against Defendants Wilmington and RSMC)

66. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 65 hereinabove as if set forth at length hereat..

67. Defendants RSMC and/or Wilmington did promise to pay the amounts due under the September 1st Agreement.

68. Defendants RSMC and/or Wilmington has received the benefit of the services provided by NIA without paying their obligation to the Plaintiff.

69. It is and would be inequitable to permit the Defendants to profit from NIA's efforts and utilize NIA's services without paying for the agreed value of the same.

70. Despite reasonable demand, the Defendants RSMC and/or Wilmington have failed to pay Plaintiff the money owed for services rendered.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally, as follows:

A. Compensatory damages for the amount due and owing pursuant to the September 1st Agreement, as well as accrued interest thereon pursuant to the terms thereof;

B. Punitive damages for the willful failure to honor the Agreement;

C. An accounting of all share purchases from September 1, 2002 through the date hereof, in the Combined Funds by ING customers or that are or were owned beneficially by ING customers;

D. Attorney fees;

E. Interest and costs of this suit;

F Such other and further relief as the court may deem proper and just under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

Respectfully submitted,
EDWARD M. TEITELBAUM, P.C.
Attorney for Plaintiffs

By:_____
    EDWARD M. TEITELBAUM
    Reg. No. ET 2729

DATED: March 4, 2008

## CERTIFICATION

I hereby certify that the matter in controversy is not subject to any other court proceeding or arbitration to the best of my knowledge, information and belief, and no other parties need be joined at this time, and no other proceedings are contemplated.

EDWARD M. TEITELBAUM, P.C.
Attorney for Plaintiffs

By:_____
    EDWARD M. TEITELBAUM
    Reg. No. ET 2729

DATED: March 4, 2008